CASE No. 889.

## COTHRAN v. KNOX.

1. An award is not binding upon a party not accepting it, where there is no evidence of a previous dispute between the parties concerning the matters submitted, and it does not clearly appear what matters were submitted, or to whom.
2. An award will be set aside where the evidence shows that the arbitrators acted with partiality towards one of the parties.*
3. In the absence of special contract, a partner has no right to commissions upon his collections and disbursements in the settlement of the partnership business. *Cooper* v. *Reid,* 2 *Hill Ch.* 549, followed.
4. A finding of fact by a referee, reversed by the Circuit judge, sustained upon a review of the evidence.

* The same doctrine has been recently declared by the Supreme Judicial Court of Massachusetts, September, 1880, in *Hills* v. *Home Ins. Co.* See 10 *Reporter* 698.

Before FRASER, J., Abbeville, April, 1879.

McGowan, A. J., having been of counsel in this cause, did not sit at the hearing.

This is an action brought in August, 1870, by James S. Cothran, as executor of Joel J. Cunningham, deceased, against John Knox. The pleadings and facts of the case are stated in the report of Ellis G. Graydon, Esq., special referee, to whom it was referred to state the accounts. His report is as follows:

This action was originally begun by complaint on a sealed note dated August 26th, A. D. 1870, whereby the defendant promised to pay to plaintiff's testator one day after the date thereof, the sum of $5091.85, together with interest thereon from January 1st, of the same year, at the rate of *ten per centum per annum.* The complaint admits a payment of $966.65, made on September 1st, of the same year of its execution, and claims judgment for the balance.

The answer admits the execution of the note with the credit endorsed, and alleges—

I. By way of defence :

That on April 7th, 1873, the defendant and plaintiff's testator submitted their matters to T. B. Millford and J. C. Wosmansky, who made a settlement and delivered a copy to each of them, which settlement was accepted by them as correct and final, and by which the defendant was found to be indebted to the plaintiff's testator on that day in the sum of $749.73.

II. By way of counter-claims—

1. Draft in testator's favor drawn April 14th, 1873, for $60.

2. Draft in testator's favor drawn April 15th, 1873, for $90.60.

3. Note paid to Quarles & Perrin, May 22d, 1873, for $214.48, with interest from January 1st, 1873, at *twelve per centum per annum.*

4. Account for 1873 for $44.25.

The answer also offers to pay plaintiff $512 and costs in discharge and satisfaction of this claim.

The reply denies all knowledge of the matters set up by way of counter-claims in the answer.

2 I

The plaintiff, subsequently, by leave of the court first had and obtained for that purpose, amended his complaint so as to demand of the defendant an account of the partnership affairs of J. Knox & Co., which firm was composed of the defendant and plaintiff's testator.

The answer to the amended complaint alleges—

1. That the partnership began January 2d, 1868, and ended December 21st, 1869.

2. That soon after the close of the partnership, a settlement was made which adjusted everything relating to partnership matters, except uncollected assets and outstanding debts of the firm, and which resulted in the note for $5091.85 now in suit.

3. That defendant has collected assets and paid debts, and that he has on hand a number of notes and accounts deemed worthless, and that upon a fair adjustment, he thinks his late co-partner will fall in his debt.

4. That the settlement hereinbefore referred to made on April 7th, 1873, by T. B. Millford and J. C. Wosmansky, reduced the note for $5091.85 to $749.73.

5. That the hotel property mentioned in the complaint was held by them rather as joint owners than as partners, and that all matters relating to it had been fully adjusted between them, leaving a small lot of a half acre still unsold.

6. That defendant has paid taxes on said lot, and has been at considerable trouble and expense collecting assets, &c., and claims remuneration for the same.

I am of opinion, after careful consideration, that the defence set up in the answer of settlement and award made by Messrs. Millford and Wosmansky must be overruled for the following reasons :

1. Because of partiality in the arbitrators. They got all the books and papers used by them from the defendant Knox. They were attended by said defendant during the time they were making the settlement, but never summoned the plaintiff's testator to come before them. They allowed the defendant to explain and contradict writings by his unsupported and parol testimony, and after the statement had been made, they signed it together in the presence of the defendant, without giving Cunningham

notice of the time and place of such meeting. Partiality to avoid an award need not be corrupt partiality ; it is sufficient if the conduct of the arbitrators has been such as to give either party an advantage over the other.

2. Because of error apparent on the face of the settlement considered along with the papers on which it was based. In several instances due-bills and notes signed by the decedent and made payable to J. Knox & Co., were charged against him as if they had been made payable to defendant alone, upon defendant's unsupported testimony ; that they ought to have been made payable to him, although the defendant still had in his possession the whole of the assets of J. Knox & Co. It was error in the arbitrators to allow the defendant to contradict these writings by parol testimony of any kind, and more especially by his own unsupported testimony.

3. Because the alleged settlement was never acquiesced in by the decedent. It is alleged in the answer that it was, but there is no proof of it, the only witness examined on that point testifying that it was not.

4. Because it professes to be a settlement of individual matters and not to include partnership matters, but includes matters which clearly relate to the partnership. In fact, all the transactions between the defendant and decedent were such as grew immediately or remotely out of their connection as partners.

I am of opinion that it is incumbent upon the defendant Knox, standing as he does in a fiduciary relation to the decedent, to show affirmatively that the settlement was fair and impartial; that it is free from error either in law or in fact; that it was acquiesced in by the decedent, and that it embraces all such matters, and only such, as it professes to embrace. This he has failed to do.

I further find that the counter-claims set up in the defendant's answer are valid claims against plaintiff's testator, and must be allowed as claimed.

I have deemed it best to keep individual matters and partnership matters separate and distinct as far as possible, and I therefore first give a statement showing the amount due on the note in suit. In making the statement I strike a balance on January

1st, of each year, considering all accounts made with the defendant by the plaintiff's testator during the preceding year as due on that day, and allowing the defendant interest on all notes and due-bills drawn in his favor by plaintiff's testator, and on all sums of money paid by him to or for said testator during the preceding year from their dates respectively to that day. The note is dated August 26th, 1870, payable one day after date, with interest from January 1st, 1870, at the rate of ten per centum per annum, and according to my view of the law I have computed interest on it from January 1st, 1870, to August 27th, 1870, at ten per centum. I then compute interest at seven per centum from August 27th, 1870, on the amount of principal and interest due on that day, and in like manner up to the date of this, my report, subtracting payment as above.

The account will stand as to the note as follows :

[Here follows a statement of accounts.]

In making up the foregoing statement, I have not allowed the defendant credit for certain accounts of S. W. Cunningham for 1870 and 1871, because there is no proof of a promise, verbal or written, by plaintiff's testator to pay them. The letters in the margin of the statement correspond with those made on the documents put in evidence. I next give a statement showing the amount due by the defendant to plaintiff's testator on account of the partnership affairs of the late firm of J. Knox & Co. This statement includes all matters in which the defendant and the testator had a joint interest, as well those not connected with the mercantile adventure as those that were. In making it I have considered it best to treat all moneys received each year as if received on January 1st of the ensuing year, and all payments made during the year as if made on that day. Applying the rule as to trustees, I think it but just that the defendant should have commissions of five per centum on all collections made by him, and I accordingly next allow them. I then divide the remainder, if any, by two, subtract from this quotient any sums of money due by the testator to the firm of J. Knox & Co., and compute interest on the residue to the date of this my report. The account will then stand as follows :

[Here follows a statement of accounts.]

The claim of plaintiff that the note to Eakin & Knox, marked "A," was included in a former settlement is not allowed. It does not anywhere appear, and the fact that it was still in the hands of defendant raises a presumption, conclusive to my mind, in the absence of proof to the contrary, that it has never been paid.   *   *   *

EXTRACTS FROM SO MUCH OF THE TESTIMONY AS IS MATERIAL TO THE CASE MADE IN THIS COURT.

The award is a bare statement of accounts between J. J. Cunningham and John Knox, below which is written :

The above is a settlement, individually, between J. Knox and J. J. Cunningham. Settlement between J. Knox & Co. and J. J. Cunningham not included in the above.

7th April, 1873.       J. C. WOSMANSKY,
            T. B. MILLFORD.

$326.00.           June 15th, 1868.

One day after date I promise to pay Eakin & Knox, or bearer, three hundred and twenty-six dollars, value received, with interest from date.

[No. 1 of award.]       J. J. CUNNINGHAM.

[Copy of note No. 8 of alleged award, with endorsement.]

Due John Knox four hundred and sixty and 21-100 dollars, to pay Dr. Brown on settlement, this 5th May, 1870.

           JOHN KNOX & Co.,
$460.20.             per Evans.

[Endorsement.]

This should have been signed J. J. Cunningham, per Evans, said Evans having made an error, as per statement of J. Knox.

            T. B. M.
            J. C. W.

[Copy of note No. 5 of alleged award, with endorsement.]
$86.61.

Due J. Knox & Co. eighty-six 61-100 dollars, to pay H. S. Cason for one (1) bale of cotton of J. M. Hudson's, this the 28th March, 1870.       J. J. CUNNINGHAM,
            per Evans.

[Endorsement.]

This should have been made payable to J. Knox, individually, which can be testified by Evans, as per statement of J. Knox.

T. B. M.

J. C. W.

Testimony of T. B. Millford.

The paper marked *Exhibit O* is in the handwriting of Mr. J. C. Wosmansky, and was signed by Mr. Wosmansky and myself; I recognize our signatures; Mr. Wosmansky is dead.

Mr. Knox first asked me to make a settlement between Mr. Cunningham and himself; I consented to make the settlement if Mr. Cunningham would come and ask me to do so, and both of them would consent for Mr. Wosmansky to assist; Mr. Cunningham afterwards came to me and asked me to make the settlement; I cannot say which selected Mr. Wosmansky first, but it is my impression that both parties agreed to Mr. Wosmansky assisting me; I would say positively that I would not have consented to make the settlement if I had not understood that both parties consented to Mr. Wosmansky assisting.

I think there was only one copy of the settlement, and that was left with Mr. Knox; Mr. Knox acquiesced in the settlement, but Mr. Cunningham never did; Cunningham never did say to me that he acquiesced in the settlement, but Knox appeared to do so—at least he never made any objection to it.

When I asked Mr. Cunningham for his papers he said that Knox had them all; Mr. Knox turned over to me a number of papers belonging both to Cunningham and himself, and the books of the firm, and from these settlement was made up; I cannot say whether all the papers necessary for the settlement were turned over or not.

This settlement was made up from the papers furnished to me by Mr. Knox, and on these data was correct and fair to both parties—I know nothing to the contrary.

I have no personal knowledge that Mr. Cunningham repudiated the settlement made by Mr. Wosmansky and myself.

I do not know what the note ($5091.85) was given for, and did not know of its existence until it was handed to me by Mr. Knox to make up the settlement; the note was included in the

-settlement made by Mr. Wosmansky and myself; I know nothing of any settlement made prior to that exhibited, marked *Exhibit O;* when we made that settlement we allowed both parties such credits, and only such, as in our judgment they were -entitled to.

I mean to say that the settlement is correct and fair to both parties, provided the data upon which it was made were correct; I had no other means of judging but from papers furnished.

Mr. Cunningham never acquiesced in the settlement.

I think I can safely say that Mr. Cunningham was never present while the settlement was being made up; I cannot say whether or not Mr. Knox was present at any time while the settlement was being made up, but after it was finished Mr. Wosmansky and myself carried it to Mr. Knox, read it over to him, and signed it in his presence.

J. F. C. Du Pre sworn.

Note produced ($5091.85) in witnesses' handwriting, except signature; credit in Cunningham's handwriting; Knox and Cunningham formed partnership, thinks, in fall of 1867; on January 2d, 1868, articles of partnership; first time they went together included profits of hotel business; witness clerked for Knox & Co.; they gave witness $600 and rent of hotel. [Articles of partnership read and offered in evidence.] Partnership lasted two years, 1868 and 1869; Cunningham sold to Knox in December, 1869; Knox gave to Cunningham a note in August, 1870; settlement and dissolution of partnership January 1st, 1870; settlement included stock of merchandise of all kinds, -cash on hand, everything belonging to the firm in the mercantile adventure, and it includes all private claims between the parties up to January 1st, 1870; it left in Knox's hands accounts and notes of firm, and left debts of firm unpaid; full settlement of all matters, partnership and individual; they had not been equal partners in realty, but this settlement made them so; everything was taken into the settlement.

H. S. Cason being sworn, says—

Knew Mr. Cunningham well in his lifetime; knew Mr. Bailey Millford; heard Mr. Cunningham say to Mr. Knox that he was -willing to give over all books and papers to Mr. Millford to

make settlement; Cunningham and Millford were friends; conversation was at Kurz's after fire; thinks Cunningham and Millford were special friends.

Cross-examination.

Down at Kurz's building; don't know now conversation; Cunningham said to Knox, "Knox, Millford is an honest man, and I am willing to turn books and papers over to him to make a settlement between us." Witness did not hear Wosmansky's name called.

To the report of the referee exceptions were filed by both parties.

The defendant, Knox, excepts to the referee's report as erroneous in the following particulars:

1. That he has set aside the arbitration and award between the parties, made in writing by Messrs. T. B. Millford and J. C. Wosmansky, April 7th, 1873, *Exhibit O* of defendant's answer, which was error, said award being final and conclusive.

2. That in re-stating the accounts between the plaintiff's testator and the defendant, he has incorporated in the settlement of partnership matters a very large amount, over $3500, which had been considered, adjusted and settled by said award, in this way largely increasing, contrary to justice and equity, the liabilities of the defendant.

4. That two accounts embraced in the award against the plaintiff's testator are disallowed in the report, to wit, the accounts against S. W. Cunningham of $183.94, for 1871, and $38.45 for 1872.

The plaintiff excepts to the report so far as the account against John Knox is concerned, upon the following grounds:

1. Because the referee allowed the defendant, John Knox, commissions of five per cent. upon all receipts as survivor, which amount to over $600.

2. Because the referee allowed Knox credit for the Eakin & Knox note ($326,) bearing date June 15th, 1868, which had been settled in the note of John Knox for $5091.85, of August 27th, 1870.

So much of the Circuit decree as bears upon the questions decided by this court, is as follows:

So much of these cases as relates to the issues between the plaintiff, as executor of Joel J. Cunningham, and the defendant, John Knox, was heard by me at the special term of the Court of Common Pleas, held for Abbeville county, in April, 1879.

The case came up on a report of the special referee, Ellis G. Graydon, and exceptions thereto by the plaintiff and the defendant, John Knox.

The difficulty I have felt in coming to a satisfactory conclusion, especially as to the issues of fact raised by the parties, have been increased by the unavoidable circumstances to which it is due, that so long a time had passed between the hearing and the filing of this decree.

I will consider first the exceptions filed by the defendant, John Knox.

1. The first exception is, that the referee set aside an award made by J. C. Wosmansky and T. B. Millford, which purports to settle various matters between the deceased Joel J. Cunningham and the defendant, John Knox. The validity of an award, like the act of an agent, depends entirely upon the proof of the authority under which one man undertakes to dispose of the property or rights of another, even if everything is conducted fairly and properly by the agent or arbitrators, as the case may be. This proof must be made independently of the act of the agent or the mere statements in an award. The proof, to my mind, is altogether too vague as to what was referred to the arbitrators to justify the court in holding the parties bound by the award. The award professes to dispose of individual matters. The testimony does not show whether individual or partnership matters were referred, or both.

For this reason, as well as those given by the referee, I think the first exception should be overruled, and it is so ordered and adjudged.

2. The second exception falls with the first, and must be also overruled, and it is so ordered and adjudged.

4. I am not satisfied with the sufficiency of the evidence to show that Joel J. Cunningham was liable for the debts of S. W. Cunningham. There should have been some agreement in writing to transfer this liability from the person to whom the credit was

given to any third person, and a copartnership between Joel J. and S. W. Cunningham does not change the position of affairs. This exception—the fourth—is therefore overruled, and it is so ordered and adjudged.

As to exceptions filed by plaintiff.

1. The first exception refers to the allowance of five per cent. on collections to the defendant Knox, the surviving partner, as compensation. If I could find authority I would be willing to allow this as fair compensation. If, however, the personal services of a partner who is winding up the affairs of the firm, can be made a matter of charge against the assets, or the other partner, without some special agreement to that effect, it is easy to see how a selfish partner could very easily absorb, for his own services, a large part of the assets. If entitled to compensation at all, there is no rule to confine him to five per cent. The rule, I take it, is laid down in *Beattie* v. *Wray*, 19 *Penna. St.* 519, (see note, Parsons on Partnership, p. 230,) and is, perhaps, a wise one. This exception is therefore sustained, and it is so ordered and adjudged.

2. Nothing which entered into the settlement which was the basis of the note of August 27th, 1870, for $5091.85, given by John Knox to the deceased Cunningham, ought to enter into this accounting, and this second exception is sustained, and it is so ordered and adjudged.

All questions raised and settled by the said report, except those herein referred to, are reserved; and it is ordered and adjudged that the report of the referee as to the issues between the plaintiff and defendant, John Knox, be recommitted to the referee to be reformed in accordance with this decree.

DEFENDANT'S GROUNDS OF APPEAL.—The Supreme Court will be asked to reverse the Circuit decree in this case in sundry particulars, on the following grounds:

1. The Circuit decree set aside the award, whereas it should have sustained it. There were no allegations and no proof that it was invalid by reason of partiality, mistake, non-acquiescence by Cunningham, or for any other reason sufficient in law to invalidate it. The death of Cunningham, of the arbitrators, and of Evans, the clerk, so altered the conditions and circumstances

relating to the matters between Cunningham and Knox, and besides depriving Knox of important witnesses, closed his mouth in regard to transactions between them, that the court should require exceptionally strong testimony to impeach the award, and such testimony is wholly lacking in the case.

2. That said decree should have allowed appellant's fourth exception to the referee's report, in regard to the two accounts of Knox against S. W. Cunningham, embraced in said award, amounting to $183.94 and $38.45.

3. That said decree should have allowed five per cent. commissions or compensation to Knox on collections and disbursements of partnership assets, allowed by the referee.

4. That it was error in said decree to refuse Knox credit for the Cunningham note payable to Eakin & Knox, (respondent's second exception to referee's report,) for $326, allowed by the referee. There was no evidence that it had entered into the, $5091.85 note; on the contrary, there was evidence that it had not.

*Mr. Edward Noble*, for appellant.

*Messrs. W. H. Parker* and *L. W. Perrin*, contra.

July 8th, 1880.   The opinion of the court was delivered by

McIVER, A. J.   Upon all the questions raised by this appeal, except that raised by the fourth ground, we agree with the Circuit judge.

As to the alleged arbitration, we think it lacks one essential feature, which deprives it of the character claimed for it.   It seems to us to be essential to the very idea of an arbitration that there should have been an antecedent dispute or controversy between the parties.   As is said by Morse, in his work on Arbitrations and Awards, at page 40, quoting from Russell's work on the same subject, "a decision which precludes differences from arising instead of settling them after they have arisen, is, for many purposes, not an award."   Or, as is said in *Smith* v. *B. C. & M. R. R. Co.*, 36 *N. H.* 458, "if the parties have a difference or dispute, however trivial, or upon a matter however simple,

and in whatever mode the truth is to be ascertained, and they select an indifferent third person to be the judge between them, and bind themselves to abide his decision, that seems to us a submission to arbitration, and the decision to be an award." In the case now under consideration, there is no evidence whatever tending to show that the parties had had any previous dispute or difference, but, on the contrary, they seem to have been the best of friends, the one reposing so much confidence in the other as to leave in his possession a note for a large amount against that other. The most natural inference to be drawn from the testimony is, that so far from there having been any previous controversy between the parties, the only difficulty that seemed to be in their minds was the preparation of an account of their complicated transactions, from books which did not appear to have been kept with much accuracy or system, for the purpose of enabling them to ascertain how they stood towards each other. This would call for the services of a skilled accountant rather than for those of arbitrators, strictly speaking. If this was what was in the minds of the parties, then clearly the account prepared by the so-called arbitrators could at most only furnish the basis for a subsequent settlement between the parties, and, until accepted, would not be binding. So far as Cunningham is concerned, there is not only no evidence of his having ever accepted the statement, so prepared, as correct, but, on the contrary, the evidence tends to show that he never saw it, and never knew anything about it.

But even assuming that the foregoing objection is not well founded, there is another, fatal to the alleged award. While it is very true that a submission to arbitration may be by parol as well as by deed or rule of court, yet it is essential that it should appear clearly from the evidence *what* matters are to be submitted, and *to whom*. Here the testimony is defective in both respects. The testimony of Millford is that he was asked by Knox "to make a settlement between Mr. Cunningham and himself.   *   *   *   Mr. Cunningham afterwards came to me and asked me to make the settlement;" but what matters were to be embraced in such settlement this witness did not state. The natural inference from the language used would be

that it was to embrace *all* matters between them, as well partner-ship as individual accounts, and yet it is not pretended that the partnership accounts were to be embraced, and the arbitrators expressly say that their award embraced only the individual and not the partnership accounts. The testimony of Cason is: "Heard Mr. Cunningham say to Mr. Knox that he was willing to give over all books and papers to Mr. Millford to make settle-ment.     *     *     *     Cunningham said to Knox, 'Knox, Millford is an honest man, and I am willing to turn books and papers over to him to make a settlement between us.'" Here again is the same uncertainty as to what matters were to be em-braced in the settlement, and the same inference may be drawn from the language used, that *all* matters, as well partnership as individual, were intended to be embraced. If, therefore, the in-tention of the parties was to submit *all* matters, as well partner-ship as individual, to arbitration, and the arbitrators have con-fined their award, as they manifestly have done, to the individual transactions, this certainly would be a fatal objection to the award, because while Cunningham might have been willing to submit *all* matters, partnership as well as individual, to arbitration, it does not by any means follow that he would have been willing to submit only the individual transactions between himself and Knox to arbitration. For it was possible that an adjustment of the individual transactions might have brought Cunningham in debt to Knox, while if the partnership transactions had been brought into the arbitration, the balance might have been the other way. Be this, however, as it may, the basis of every arbi-tration is the consent of the parties, and where arbitrators make an award in which certain transactions embraced in the submis-sion have been entirely ignored, such an arbitration cannot be said to have the essential element of the consent of the parties.

There is also the same uncertainty as to the persons *to whom* the matters were submitted for arbitration. The only evi-dence tending to show that Wosmansky was one of the persons selected is the vague *impression* of Millford that both parties agreed that Wosmansky should assist him in making the settle-ment, for certainly the mere fact that Wosmansky signed the paper purporting to be the award cannot be regarded as evidence

that he was one of the persons selected as arbitrators; while the testimony of Cason, the only other witness relied upon to show the submission, not only fails to show that Wosmansky was agreed upon as one of the arbitrators, but, on the contrary, shows that his name was not even mentioned. This testimony is manifestly insufficient to show who were " the judges of the parties' choice," and this, therefore, constitutes another objection fatal to the award.

But, in addition to all this, the alleged award is clearly amenable to the objection that it is partial. As is said by Nott, J., in *Shinnie* v. *Coil*, 1 *McC. Ch.* 485: " When it is said that partiality on the part of the arbitrators is good ground for setting aside an award, it is not to be understood that it must necessarily be a corrupt partiality. Any *ex parte* proceeding, the effect of which is to give an advantage to one party over the other, is such a partiality as will avoid an award." In this case, while Cunningham was not only not called upon for any statement, so far as the testimony shows, but was not even notified of any meeting of the arbitrators, the other party, Knox, was either present or in some way communicated with the arbitrators, as it distinctly appears that upon his *ex parte* statement, certainly incompetent as to one of the notes, whether under oath or not does not appear, the arbitrators undertook to change very materially two written instruments—notes of hand—in both instances in favor of Knox. It is difficult to understand how such conduct could be regarded by a fair-minded person as impartial. For when arbitrators not only permitted a bare statement of an interested party to contradict the terms of a written instrument, but actually undertook to alter the terms of another note, upon the bare statement of the party interested, that a third person, who was not examined as a witness, *could testify* that there was an error in drawing the note in the form in which it was written, without giving the other party an opportunity to be heard as to such an extraordinary proceeding, it looks very much as if the arbitration was the result of the mere dictation of one of the parties, without any regard to the interests of the other.

As to the second ground of appeal, it is very clear that there is no evidence whatever which would have justified the referee

in charging plaintiff's testator with the amount of the two accounts against S. W. Cunningham. The fact that Knox and J. J. Cunningham were partners, and that S. W. Cunningham was living on land belonging to J. J. Cunningham, would certainly furnish no evidence that the latter was to be liable for any account which the latter might see fit to contract.

As to the claim for commissions, we are unable to discover any ground upon which it can be sustained. As is abundantly shown in the authorities cited, commissions can only be claimed by virtue of some statutory provision or some contract between the parties. Where, as in this case, there is no statute allowing commissions and no evidence of any agreement between the parties to that effect, they cannot be allowed. But it is sufficient for us to say that in the case of *Cooper* v. *Reid*, 2 *Hill's Ch.* 549, the point has been distinctly decided adversely to the claim of the appellant.

We think, however, that the Circuit judge erred in refusing to give the appellant credit for the note of Cunningham to Eakin & Knox. He seems to base his judgment upon the assumption that this note was embraced in the settlement made by Du Pre in 1870. But we are unable to discover any evidence that such was the case, and, on the contrary, think that the evidence tends to show the reverse. There is no pretence that there is any direct evidence showing that the note in question went into that settlement, but the argument is that it must be presumed to have entered into that settlement, because the giving of the note for $5091.85 raises a presumption that all antecedent indebtedness had been settled. It is very true that the giving of a note furnishes a presumption of the liquidation of all antecedent accounts, yet this is a mere presumption, liable to be rebutted, as is said in *Chewning* v. *Proctor*, 2 *McC. Ch.* 15, " by very slight circumstances," or, as is perhaps more correctly said in *Morse* v. *Ellerbe*, 4 *Rich.* 606, " *until explained or rebutted*, the legal presumption · from giving a note is that all precedent indebtedness of the maker is covered by it." Where, however, the note is given in a different right, it may well be questioned whether there is any room for such a presumption. A note given by Knox to Cunningham would not necessarily raise the presump-

tion that a note previously given by Cunningham to Eakin & Knox had been liquidated, for in law they are totally distinct persons, and unless there was evidence showing that at the time the last note was given the first was in the possession and under the control of Knox, the presumption would not arise, for it might be that the first note had become the absolute, individual property of Eakin, and that Knox had thereby lost all control over it. But, in addition to this, the uncontradicted testimony of Knox is that the note in question did not go into the settlement, and all the circumstances tend, in our opinion, to corroborate his testimony. Hence, even if the presumption contended for could arise it is certainly rebutted by the evidence. We think, therefore, that the Circuit judge erred in sustaining plaintiff's second exception to the report of the referee, and that in this respect also the report should be confirmed.

The judgment of the Circuit Court, as modified herein, is affirmed, and the case is remanded to that court for such further proceedings as may be necessary.

WILLARD, C. J., concurred.